IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF M.P.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF M.P., ALLEGED TO BE A DANGEROUS SEX OFFENDER.

M.P., APPELLANT,
V.
MENTAL HEALTH BOARD OF THE 11TH JUDICIAL DISTRICT, APPELLEE.

Filed January 13, 2015.    No. A-14-234.

Appeal from the District Court for Lincoln County: DONALD E. ROWLANDS, Judge. Affirmed.

Patrick M. Heng, of Waite, McWha & Heng, for appellant.

Jennifer Clements, Deputy Lincoln County Attorney, for appellee.

IRWIN, RIEDMANN, and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

The Mental Health Board of the 11th Judicial District (the Board) determined that M.P. is a "dangerous sex offender" within the meaning of the Sex Offender Commitment Act (SOCA), Neb. Rev. Stat. § 71-1201 et seq. (Reissue 2009), and ordered him committed for inpatient treatment. The Board's determination was affirmed on appeal to the district court for Lincoln County. M.P. now appeals to this court, contending that the district court erred in affirming the order of the Board for several reasons. We find no error in the lower court proceedings, and we affirm.

## II. BACKGROUND

During the summer of 1992, M.P. was convicted of two counts of sexual assault of a child and one count of first degree sexual assault. He was subsequently sentenced to a total of 11 to 43 years in prison for his convictions. The convictions were a result of M.P.'s sexually assaulting three different children, one girl and two boys.

Prior to M.P.'s scheduled release from prison, the Nebraska Department of Correctional Services (DCS) ordered an evaluation pursuant to Neb. Rev. Stat. § 83-174.02 (Reissue 2014) in order to determine whether M.P. was a dangerous sex offender. Neb. Rev. Stat. § 83-174.01 (Reissue 2014) defines a dangerous sex offender as a person who suffers from a mental illness or from a personality disorder which makes that person likely to engage in repeat acts of sexual violence, who has been convicted of multiple sex offenses, and who is substantially unable to control his or her behavior.

The evaluation of M.P. was performed by Alan Levinson, Psy.D., a licensed psychologist who is experienced in sex offender risk assessment. Dr. Levinson prepared a written report of his evaluation dated December 20, 2012. In his report, Dr. Levinson concluded that M.P. is a dangerous sex offender. Specifically, he found:

> [I]t is my professional opinion that [M.P.] does meet criteria to be classified as a Dangerous Sex Offender. Specifically, he meets the criteria for the Axis I [diagnosis of] Paraphilia NOS, a disorder which has been shown to increase the likelihood of repeat acts of sexual violence. Also, he meets the criteria for the Axis II diagnosis of Personality Disorder NOS, and he has been convicted of three sexual offenses. This, along with his disclosure of ongoing sexual fantasies involving underage females and multiple failures to complete sex offender treatment, is indicative of serious difficulty controlling or resisting the desire to commit sexual offenses in the future.

As a result of Dr. Levinson's conclusion that M.P. is a dangerous sex offender, the Lincoln County Attorney filed a petition pursuant to SOCA on February 20, 2013, alleging that M.P. is a dangerous sex offender who suffers from both a mental illness and a personality disorder which makes him likely to engage in repeat acts of sexual violence. The petition also alleged that M.P. was "substantially unable to control his criminal behavior" and that neither voluntary hospitalization nor other less restrictive treatment alternatives were available or would suffice to prevent the harm described in § 83-174.01.

Prior to a hearing on the petition, M.P. filed a motion requesting that the Board order an independent sex offender psychological evaluation. The Board granted M.P.'s motion, and Dr. Carl Greiner conducted an evaluation of M.P. on March 20, 2013. Dr. Greiner then completed a written report of his evaluation, which was dated April 1, 2013. In that report, Dr. Greiner stated:

> To a reasonable degree of medical certainty, this examiner found that [M.P.] has mental disorders including Pedophilia and Personality disorder NOS. He had been convicted of sexual offenses. He was not acknowledging his past deviant sexual behavior which would make him substantially unable to control his criminal behavior. Based on this psychiatric interview, police reports, and psychological assessment, [M.P.] met the Nebraska criteria as a Dangerous Sex Offender.

On April 17, 2013, the Board conducted a hearing on the petition. At the hearing, the State offered into evidence three exhibits: the report based on Dr. Levinson's evaluation of M.P., the report based on Dr. Greiner's evaluation of M.P., and certified copies of M.P.'s prior sexual assault convictions. M.P. objected to the admission of Dr. Levinson's report on the ground that DCS had failed to order this initial psychological evaluation within the timeframe stated in § 83-174.02(2) and that, as a result, the State should not be permitted to benefit from the report's admission into evidence. M.P. further argued that he requested the second evaluation only in response to the initial evaluation, which he believed was not admissible. The Board overruled M.P.'s objections and permitted the reports to be admitted into evidence.

During M.P.'s case in chief, he offered the testimony of his aunt, who resides in California. She testified that she had arranged for M.P. to attend an outpatient treatment facility near her home where she believed he would receive the sex offender treatment he needed and benefit from nearby family support. However, she indicated that this was not a psychiatric treatment facility, that it did not offer onsite treatment programs, that M.P. would be free to leave the facility whenever he wanted, and that there would be no consequence if M.P. decided to leave the treatment facility.

M.P. also testified at the hearing. During his testimony, he hesitantly admitted that he had sexually assaulted children and generally acknowledged that he was in need of some sort of mental health treatment. However, he also testified that he did not believe inpatient treatment would be necessary or beneficial to him.

Following the hearing, the Board entered an order in which it found clear and convincing evidence that the allegations in the petition were true. The Board found that M.P. is a dangerous sex offender as defined by § 83-174.01 and that inpatient treatment was the least restrictive treatment alternative which would meet M.P.'s needs and protect the community. The Board ordered M.P. committed to the Nebraska Department of Health and Human Services for inpatient sex offender treatment pursuant to an individualized treatment plan.

M.P. appealed the Board's order to the district court, which affirmed the Board's decision. The court found no merit to M.P.'s argument that the reports from the psychological evaluations should not have been admitted into evidence because the initial evaluation was not ordered within the time periods specified in § 83-174.02(2) or that the Board erred in ordering him committed to an inpatient treatment facility when he presented evidence of a valid, outpatient treatment alternative. The court found sufficient evidence to support both the Board's finding that M.P. is a dangerous sex offender within the meaning of SOCA and its finding that inpatient involuntary treatment is the least restrictive treatment alternative.

M.P. appeals from the district court's order.

## III. ASSIGNMENTS OF ERROR

On appeal to this court, M.P. assigns and argues two errors. First, he asserts that the Board erred in admitting into evidence the reports based on his two psychological evaluations. Second, he asserts that the Board erred in finding sufficient evidence that inpatient treatment was the least restrictive treatment alternative.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

The district court reviews the determination of a mental health board de novo on the record. *In re Interest of D.H.*, 281 Neb. 554, 797 N.W.2d 263 (2011). In reviewing a district court's judgment upon review of a mental health board determination, an appellate court will affirm the judgment unless it finds, as a matter of law, that the judgment is not supported by clear and convincing evidence. *Id.*

### 2. ADMISSIBILITY OF RESULTS OF PSYCHOLOGICAL EVALUATIONS

In his brief to this court, M.P. first argues that the district court erred in affirming the Board's decision to admit into evidence the two reports which were based on his psychological evaluations. M.P. contends that DCS failed to comply with the timing requirements of § 83-174.02 when it requested the initial evaluation and that, as a result, the reports should not have been admitted into evidence. Upon our review, we conclude that M.P.'s assertion has no merit.

Section 83-174.02 directs DCS to order a mental health evaluation of certain sex offenders, including those convicted of first degree sexual assault, in order to determine whether the individual is a dangerous sex offender. M.P. focuses on that part of the statute which provides:

> The evaluation required by this section shall be ordered at least one hundred eighty days before the scheduled release of the individual. Upon completion of the evaluation, and not later than one hundred fifty days prior to the scheduled release of the individual, [DCS] shall send written notice to the Attorney General, the county attorney of the county where the offender is incarcerated, and the prosecuting county attorney. The notice shall contain an affidavit of the mental health professional describing his or her findings with respect to whether or not the individual is a dangerous sex offender.

§ 83-174.02(2).

The initial psychological evaluation of M.P., which was completed by Dr. Levinson, was dated December 20, 2012. M.P. was scheduled to be released from prison in April 2013 and, in fact, was released from prison on April 3, 2013. Clearly then, the evaluation was not completed within the time constraints described in § 83-174.02(2).

M.P. asserts that, as a result of DCS' failure to comply with the statutorily mandated time constraints, he was prejudiced in two ways. First, he argues that he had to serve additional prison time because he was taken into custody based on the allegations in the petition immediately after being released from prison for his sexual assault convictions. Second, he asserts that he was "force[d] . . . to scramble to find his own psychiatrist/psychologist to perform an evaluation." Brief for appellant at 8. M.P. asserts that there must be some sort of consequence for DCS' failure to comply with the statutory timing constraints and the resulting negative effects such failure creates for those individuals in his situation. M.P. believes that one such consequence is that the results which stem from the untimely evaluation should not be admitted into evidence.

- 4 -

The Nebraska Supreme Court has previously analyzed and interpreted the timing requirements delineated in § 83-174.02(2). In *In re Interest of D.H.*, 281 Neb. 554, 797 N.W.2d 263 (2011), the court held that the failure to comply with the timing requirements contained in § 83-174.02(2) did not divest a mental health board of jurisdiction with respect to a proceeding under SOCA. In coming to this conclusion, the court noted that § 83-174.02 is not a part of SOCA. *In re Interest of D.H.*, 281 Neb. at 560, 797 N.W.2d at 269. The court went on to state:

> The time periods mentioned in § 83-174.02(2) designate when DCS shall provide information to prosecutors, but the statute does not prescribe any type of notice to the offender. We conclude that § 83-174.02 provides a mechanism for identifying potentially dangerous sex offenders prior to their release from incarceration and for notifying prosecuting authorities so that they will have adequate time to determine whether to file a petition under SOCA before the offender's release date. But the statute does not create any substantive or procedural rights in the offender who is the subject of the mental health evaluation.

*In re Interest of D.H.*, 281 Neb. at 561, 797 N.W.2d at 269.

The Supreme Court clearly interpreted the timing constraints contained in § 83-174.02(2) to be solely for the benefit of prosecuting authorities so that there is adequate time for them to determine whether to file a petition pursuant to SOCA prior to an offender's release from prison. The court also clearly indicated that DCS' failure to comply with the timing constraints "does not create any substantive or procedural rights in the offender." *In re Interest of D.H.*, 281 Neb. at 561, 793 N.W.2d at 269. We read the court's limited interpretation of § 83-174.02(2) to provide that DCS' failure to comply with the timing constraints does not require a mental health board to omit from evidence any report constructed from an untimely evaluation. Accordingly, we conclude that the district court did not err in affirming the Board's decision to admit into evidence the reports from both of M.P.'s psychological evaluations.

### 3. LEAST RESTRICTIVE TREATMENT ALTERNATIVE

We now turn to M.P.'s assertion that the evidence before the Board was insufficient to support its finding that he should be committed for inpatient treatment. We note that in its de novo review, the district court found the evidence to be sufficient to support the findings and actions of the Board under SOCA. Our standard of review requires that we affirm unless we can conclude, as a matter of law, that the judgment is not supported by clear and convincing evidence. *In re Interest of D.H., supra*.

In order for a mental health board to commit an individual who has been found to be a dangerous sex offender to inpatient treatment, there must be clear and convincing evidence that neither voluntary hospitalization nor other treatment alternatives less restrictive of the subject's liberty than inpatient treatment ordered by the Board are available or would suffice to prevent the harm described in § 83-174.01(1). See § 71-1209(1). In his brief on appeal, M.P. asserts that there was insufficient evidence presented that inpatient treatment was the least restrictive treatment alternative because he and his aunt testified that there was a less restrictive treatment option at a facility in California near where his aunt resided. Upon our review of the record, we conclude that M.P.'s assertion has no merit.

The evidence presented by the State at the hearing revealed that M.P. had multiple opportunities during his approximately 20 years in prison to complete some form of sex offender treatment, but that he did not avail himself of any of these opportunities. M.P. was terminated from four separate mental health programs in prison either because he demonstrated a lack of motivation or because he failed to make any progress toward his treatment goals. M.P. admitted during his testimony that he did not complete any sex offender treatment during his incarceration; however, he appeared to blame his lack of success on the mental health professionals who worked with him and the type of programs offered, rather than on his own commitment to complete treatment.

In his evaluation, Dr. Levinson stated that M.P. "would be best served in a secure setting that offers intensive supervision and intervention." Dr. Levinson believed that inpatient treatment was the least restrictive treatment alternative available to M.P. In coming to this conclusion, Levinson noted:

> There are some additional factors which are cause for concern. [M.P.] has a history of poor insight and judgment, impulsivity, irresponsibility, and limited coping skills which make him prone to respond sexually to stressful and/or emotionally laden situations. This is evident in regard to his current conviction and history of antisocial and narcissistic behaviors. Also, he does not appear to have an adequate relapse prevention plan or a specific, stable and supportive aftercare plan in place.

Dr. Greiner agreed with Dr. Levinson about M.P.'s need for inpatient treatment. In Dr. Greiner's report, he stated:

> At the time of this assessment, [M.P.] demonstrated no interest in addressing his history of pedophilia. He would not be a candidate for outpatient treatment at this time. His least restrictive environment would be in a hospital level setting. He would be considered in a "pre-contemplative" stage of not having addressed his own actions. His prior conduct with therapy is indicative that he would need to make substantial changes in his participation to garner benefits from psychiatric treatment.

In contrast to the opinions of the mental health experts who evaluated M.P., M.P. testified that he did not believe that inpatient treatment was necessary or would benefit him. He presented a different treatment option to the Board which he and his aunt had researched together. This treatment option was an outpatient facility which focused on reintegrating convicted sex offenders back into society. This facility outsourced its treatment programs, permitted the offenders to go out into society whenever they wanted, and did not include any consequences for an offender's failure to participate in treatment. M.P. testified that if he was permitted to receive treatment at this facility, "[he] will put everything, a hundred percent effort" into completing that treatment. However, during his testimony, M.P. also appeared hesitant to even admit that he had sexually assaulted three young children. He continually stated that the evidence was insufficient to support his original convictions, which proved that he "didn't even commit the crime." M.P. also appeared hesitant to acknowledge that he needed treatment to address his diagnosis of pedophilia.

Based on all of the evidence presented at the hearing, we find that there was sufficient evidence to support the Board's finding that commitment for inpatient sex offender treatment

was the least restrictive treatment alternative which would provide M.P. with the treatment he required and which would protect the community. It is clear that M.P. has been unwilling to engage in mental health treatment for the last 20 years. In fact, he still appears somewhat unwilling to admit that he truly needs any such treatment. Such evidence suggests that M.P. will not voluntarily remain in the outpatient treatment facility in California long enough to actually address his mental health problems and complete sex offender treatment. This is exactly what two mental health professionals found in their extensive evaluations of M.P. As such, the California treatment facility is not a viable treatment option.

## V. CONCLUSION

We affirm the order of the district court, which affirmed the decision of the Board, that M.P. is a dangerous sex offender and should be committed for inpatient treatment.

AFFIRMED.